UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:22-cr-00013-JAW |
| | ) | |
| FAYSAL KALAYAF MANAHE, | ) | |
| YASER AALI, | ) | |
| AMMAR ALKINANI, and | ) | |
| QUASIM SAESAH | ) | |
| | ) | |
| Defendants. | ) | |

**INTERIM ORDER ON MOTION FOR ALTERNATIVE VICTIM NOTIFICATION**

Concluding that the government has not established that it is impracticable under the Crime Victims' Rights Act to notify all of the potential victims of an alleged criminal conspiracy, the Court orders the government to explain why it should not be required to notify the victims it has identified and can locate in combination with alternative website notice to unknown and unascertainable victims.

**I.     BACKGROUND**

On January 27, 2022, a federal grand jury in Portland, Maine, returned a one-count indictment charging Faysal Kalayaf Manahe, Yaser Aali, Ammar Alkinani, and Quasim Saesah with conspiracy to suppress and eliminate competition in the home healthcare business, in violation of Section 1 the Sherman Act, 15 U.S.C. § 1. *Indictment* at 4-5 (ECF No. 1). The indictment alleges that the Defendants engaged in an anticompetitive scheme involving four companies that employed home health care workers, or Personal Support Specialists (PSS), in the Portland area. After the

Maine Department of Health and Human Services increased the hourly reimbursement rate for PSS workers in 2020, in recognition and support of their efforts assisting Maine seniors during the COVID-19 pandemic, the indictment alleges that the Defendants conspired to cheat their PSS employees out of pay raises by conspiring to fix a lower hourly rate and agreeing not to hire each other's workers.

## II. THE GOVERNMENT'S MOTION

On April 14, 2022, the Government filed a motion to use alternative victim notification procedures in this case.[1]  *United States' Mot. for Alternative Victim Notification Under 18 U.S.C. § 3771* (ECF No. 61) (*Gov't's Mem.*).  The Government urges the Court to grant it "authorization to use alternative victim notification procedures—namely, publication on Department of Justice websites—in lieu of those procedures prescribed by sections 3771(a), (b) and (c), because the large number of potential crime victims in this case makes it impracticable to notify them on an individualized basis." *Id.* at 1.

The Government says the potential victims include PSS workers "either employed by any of the Defendants and their co-conspirators during the conspiracy, as well as any other PSS workers that sought employment with any of the Defendants or a co-conspirator during the alleged conspiracy period" of April 2020 to May 2020. *Id.* at 2.  The Government submits it will be impractical to individually notify "hundreds of potential victims" who may "have moved or changed addresses," and

---

[1] On April 28, 2022, one of the co-defendants, Mr. Alkinani, responded, indicating that he does not object to the Government's request. *Def.'s Resp. to Gov't' Mot. for Alternative Victim Notification Under 18 U.S.C. § 3771* (ECF No. 62).

alternatively proposes to "post a notice, accessible to news media press feeds, to the Department of Justice's website[s] . . . to direct victims to a case-specific website where all required notices will be posted." *Id.*

### III.  DISCUSSION

Pursuant to the Crime Victims' Rights Act (CVRA), the PSS workers implicated by this alleged wage-fixing scheme have a right to "reasonable, accurate, and timely notice" of the proceedings in this criminal case.  18 U.S.C. § 3771(a)(2).  Under the CVRA, the Government must make its "best efforts to see that crime victims are notified of, and accorded" these rights.  *Id.* § 3371(c)(1).  In the case of multiple crime victims, where it is "impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to [the CVRA] that does not unduly complicate or prolong the proceedings."  *Id.* § 3771(d)(2).

In support of its motion, the Government cites several cases in which federal courts approved alternative notice via Department of Justice website postings as reasonable to effectuate the CVRA.  These cases largely involved anticompetitive schemes at a national scale, over multiple years, affecting unspecified potential victims.  For example, the district court in *United States v. Netbrands Media Corporation*, No. 19-cr-065 (S.D. Tex. Feb. 4, 2019), approved of alternative notice related to a multi-year product price fixing conspiracy with "thousands of potential [customer] victims."  Similarly, the district court in *United States v. Sandoz, Inc.*, No. 20-cr-111-RBS (E.D. Pa. Mar. 4, 2020), allowed alternative notice for potential

3

customer victims of numerous multi-year bid-rigging and price fixing conspiracies related to generic drugs sold nationwide.

As this case involves multiple victims, the Government is correct that the Court has discretion, upon finding that the number of victims makes the usual form of notice "impracticable," to "fashion a reasonable procedure . . . that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). The Government says that "there are hundreds of potential victims affected by this [alleged] conspiracy." *Gov't's Mot.* at 2. Even so, typically, in alternative notice cases, the number of potential victims far exceeds the Government's estimate of the number of victims in this case. *See United States v. Vance*, No. 1:94-cr-0022-1, 2019 U.S. Dist. LEXIS 161043, at *10-11 (W.D. Va. Sept. 17, 2019) (700 to 1400 victims for whom the government did not have names or addresses); *United States v. Babich*, 301 F. Supp. 3d 213, 217 (D. Mass. 2017) ("potentially there were thousands of victims"); *United States v. Saferstein*, No. 07-cr-557, 2008 U.S. Dist. LEXIS 93834, at *7 (E.D. Pa. Nov. 18, 2008) (traditional notice "too burdensome" for "as many as 300,000 individuals" victimized by telecommunications fraud).

As the Court understands the allegations, there are different categories of potential victims: (1) PSS employees of the Defendants and their co-coconspirators, and (2) other PSS workers who may have sought employment with the Defendants or a co-conspirator during the alleged conspiracy period. *Gov't's Mot.* at 2. Alternative notice may be the only way to give notice to potential employees, absent evidence of record-keeping by the co-conspirators as to which applicants they rejected. However,

4

as at least a subset of the potential victims here should be a matter of record, namely the Defendants' PSS employees, the Government has not yet demonstrated why it should not be required to provide actual notice to the individual employees of the conspirator companies who the indictment alleges were cheated out of their wages in April and May 2020. Given the brief duration of the alleged conspiracy and the fact that some of the potential victims were in Maine and on the Defendants' payrolls during that time, the Court is not convinced that the Government is unable to comply with the CVRA's individual notification requirements, at least with respect to these employees who actually worked for the conspirator companies in April and May 2020. Moreover, given the class of victims, the Court observes that PSS workers may not have ready access to the internet and therefore the proposed notification provision is highly likely to be unavailing.

The case that most closely follows the procedure this Court envisions is *United States v. Rubin*, 558 F. Supp. 2d 411 (E.D.N.Y. 2008). In *Rubin*, the district court ordered "direct mail notice to victims the prosecutor's office had located" and after finding that individual notice to the remaining victims was impracticable, the district court allowed the government to fulfill its notice obligations through publication for unknown or unascertainable victims. *Id.* at 421-22. Here, once the Government is in contact with some of the potential victims, the Court expects the Government to determine whether these victims could lead the Government to other PSS workers who may have been affected by the alleged wage-fixing conspiracy. Once the Court is convinced that notice to the potential victims the Government seeks to notify by

website posting is truly impracticable, the Court will consider the Government's request for alternative notice. On this record, the Court is unable to make the necessary statutory finding of impracticability.

## IV.    CONCLUSION

The Court ORDERS the Government to explain why it would not be able to provide actual notice to some of the alleged victims if it used its "best efforts" to locate them, *see* 18 U.S.C. § 3771(c)(1), and how the Court could conclude based on this record that it is "impracticable" to notify some classes of alleged victims, thus justifying alternative notice. *Id.* § 3771(d)(2). The Court GRANTS the Government two weeks to file a supplementary response.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2022