UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:22-cr-00013-JAW |
| ) | |
| FAYSAL KALAYAF MANAHE ) | |
| YASER AALI ) | |
| AMMAR ALKINANI, and ) | |
| QUASIM SAESAH ) | |
| Defendants. ) | |

**ORDER ON DEFENDANT YASER AALI'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS**

In anticipation of trial, Defendant Yaser Aali, on behalf of all Defendants, files a motion in limine to exclude evidence that the government asserts may be construed as other crimes, wrongs, or acts of the Defendants under Federal Rule of Evidence Rule 404(b)(2). The Defendants contend that this evidence is inadmissible under Rule 404, irrelevant under Rule 402, and confusing and unfairly prejudicial under Rule 403. Because the Court does not know how the parties intend to present their cases, the Court is not able to rule definitively in advance of trial and instead instructs the Government to approach the bench before engaging in questions concerning the relevant defendant's prior wage fixing.

**I.   BACKGROUND**

   **A.   Procedural Background**

On January 27, 2022, a federal grand jury issued a one-count indictment, charging Faysal Kalayaf Manahe, Yaser Aali, Ammar Akinani, and Quasim Saesah with engaging in a criminal conspiracy in restraint of trade in violation of 15 U.S.C.

§ 1. *Indictment* (ECF No. 1) (*Indictment*). Trial is scheduled to commence on March 6, 2023 with jury selection to be followed immediately by trial. *Trial List* (ECF No. 151). On March 2, 2023, Defendant Yaser Aali filed his motion in limine to exclude evidence of other crimes, wrongs, or acts. *Def. Yaser Aali's Mot. in Limine to Exclude Evidence of Other Crimes, Wrongs, or Acts* (ECF No. 193) (*Def.'s Mot.*). The Government filed its response on March 3, 2023. (ECF No. 196) (*Gov't's' Opp'n*).

### B. The Alleged Conspiracy: An Overview

The indictment, consisting of nine pages, charges the Defendants and their respective home health agencies with engaging in a conspiracy to violate the Sherman Act, 15 U.S.C. § 1 by suppressing and eliminating competition for the services of Personal Support Specialist (PSS) workers through an agreement to fix the rates paid to PPS workers and through an agreement not to hire each other's workers. *Indictment* ¶ 1-18. In addition, the indictment alleges that home health agencies were eligible to apply for and did receive loans from the Small Business Administration's (SBA) Paycheck Protection Program (PPP). *Id.* ¶ 4. The PPP loans were forgivable so long as the loan recipients expended a certain percentage of the loans directly for payroll within a designated time and the indictment sets forth the managerial or ownership role the Defendants as well as other unnamed and unindicted individuals had in their respective home health agencies and the PPP loans each company (except the company affiliated with Quasim Saesah) received. *Id.* ¶¶ 5-14.

## II. THE PARTIES' POSITIONS

### A. The Defendants' Motion

The Defendants first explain that "[i]n a letter to counsel for all defendants, the government has provided notice to defendants that it will offer evidence that in 2017, Yaser Aali contacted Sarem Al-Shawk, and pressured him to agree to set, not to raise, and/or to maintain the pay rate of PSS workers." *Def.'s Mot.* at 1 (internal quotation marks omitted). According to the Defendants, "[t]he government indicated that it will offer this evidence to show Mr. Aali's knowledge regarding the charged conspiracy, and the absence of mistake" and that "this evidence is direct evidence of Yaser Aali's participation in the charged conspiracy." *Id.*

The Defendants contend that "[t]he government has no basis to suggest that conduct alleged to have been committed by Mr. Aali three years before the commencement of the alleged conspiracy in this case and not involving any of Mr. Aali's co-defendants is 'direct evidence' of Mr. Aali's participation in the alleged conspiracy in this case." *Id.* at 2. The Defendants further contend that "even if Mr. Aali did engage in such conduct, he would have needed to be clairvoyant to know that it would somehow impact a conspiracy involving completely different people three years later." *Id.* The Defendants submit that because "the government has repeatedly reminded the Court and Defendants that ignorance of the law is not a defense in this case . . . [i]t is thus difficult to comprehend how the government believes it can argue that Mr. Aali has *not* made a mistake." *Id.*

The Defendants assert that "[i]n addition to being inadmissible under Rule 404(b)(2), this evidence is irrelevant and must be excluded under Rule 402" and "[i]t

is also unfairly prejudicial and likely to confuse the jury, and therefore inadmissible under Rule 403." *Id.* The Defendants insist that "admission of this evidence will fly in the face of Rule 404(a)'s admonishment that '[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait'" and "[t]herefore, it cannot be admitted for any purpose." *Id.*

### B. The Government's Response

The Government asserts that "[i]n 2017, Defendant Aali called Mr. Sarem Al-Shawk to pressure him not to raise the rate of pay for their [PSS] workers" and contends that "[t]he evidence of this unsuccessful prior attempt at wage fixing demonstrates that Defendant Aali joined the charged conspiracy knowingly and intentionally, rather than as the result of an accident or mistake." *Gov't's Opp'n* at 1. The Government further contends that "[n]othing about this evidence is unfairly prejudicial." *Id.*

The Government submits that "[w]hen determining whether evidence may be used for a non-propensity purpose under Rule 404(b)(2), courts consider the 'temporal relationship of the other act and the degree of similarity to the charged crime,'" *id.* at 1-2 (quoting *United States v. Landry*, 631 F.3d 597, 601-02 (1st Cir. 2011)), and that "[i]f these factors indicate that the act is relevant for a non-propensity purpose and the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice under Rule 403, the evidence is admissible." *Id.* at 2. The Government further submits that "Defendant Aali's 2017 conduct is both sufficiently

4

similar and temporally proximate to the charged conspiracy to . . . be relevant and admissible." *Id.* at 3 (collecting cases). The Government asserts specifically that "defendant Aali's efforts in 2017 to coerce Al-Shawk to conspire to fix the wages of PSS workers is admissible evidence of his lack of mistake in the charged conspiracy— it indicates that he knew what wage-fixing entails and was not innocently involved in Defendants' 2020 conspiracy to fix the wages of and allocate the market for PSS workers." *Id.* (collecting cases).

Finally, the Government argues that "[t]he evidence is not unfairly prejudicial" because "there is nothing inflammatory about Defendant Aali's prior attempt at wage-fixing; since Defendants are charged with wage-fixing, this earlier attempt at fixing wages will not rouse any new passions amongst the jury." *Id.* The Government concludes that there is no "meaningful risk of confusing the issues, as the testimony concerning Defendant Aali's prior attempts at wage fixing will be brief and will constitute only a 'tiny fraction' of the Government's evidence against him." *Id.*

### III.   LEGAL STANDARDS

#### A.   Federal Rule of Evidence 404(b)(2)

Federal Rule of Evidence 404(b) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. FED. R. EVID. 404(b)(1). However, this rule permits the admission of prior acts evidence having "special" relevance—that is, evidence relevant for a non-propensity-based purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

5

absence of mistake, or lack of accident. FED. R. EVID. 404(b)(2). "In assessing whether prior acts evidence is admissible for such a purpose, a court applies a two-step test . . . [f]irst, the court asks whether the proffered evidence truly possesses 'special' relevance . . . [and i]f it does, the court then applies [Federal Rule of Evidence] 403, admitting the evidence so long as its probative value is not substantially outweighed by the risk of unfair prejudice." *United States v. De La Cruz-Feliciano*, 786 F.3d 78, 82 (1st Cir. 2015).

### B. Relevancy and Prejudice

Relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. However, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## IV. DISCUSSION

First, turning to the Rule 404(b) issue, the First Circuit has described the process by which a trial court should determine the admissibility of other crimes, wrongs, or acts under Rule 404(b), when the admission of such evidence is challenged. In *United States v. Pena*, 24 F.4th 46 (1st Cir. 2022), the First Circuit wrote that "[w]here a defendant challenges a district court's admission of [other] bad acts evidence [under Rule 404(b)], the first question for a reviewing court is whether the objected-to evidence 'has "special relevance" to the case, by which we mean that the objected-to evidence' is relevant for any purpose apart from showing propensity to

commit a crime.'" *Id* at 65 (quoting *United States v. Habibi*, 783 F.3d 1, 2 (1st Cir. 2015) (quoting *United States v. Doe*, 741 F.3d 217, 229 (1st Cir. 2013))). "In particular, the Federal Rules of Evidence specifically enumerate a number of purposes for which" evidence of a crime, wrong, or other act may be used, including "'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.* (quoting *Habibi*, 783 F.3d at 2 (quoting Fed. R. Evid. 404(b)(2)). In *Pena*, the First Circuit observed that the other acts evidence had special relevance because it rebutted the defendant's mere presence defense and demonstrated his familiarity with drug transactions. *Id.*

Next, if a trial court determines that the other acts evidence has special relevance, it still "must also evaluate the evidence's admissibility under Rule 403, specifically whether its 'probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.* (quoting FED. R. EVID. 403)).

Here, the Court is at a disadvantage in evaluating the potential special relevance of this proffered "other acts" evidence because it does not know what defenses Mr. Aali intends to put forward. In *Pena*, for example, the First Circuit reviewed the defendant's defenses and found special relevance, in part, based on the defense. If Mr. Aali merely puts the Government to its burden of proof, for example, the evidence might have less special relevance, but if he makes arguments this evidence would contradict, the evidence will have greater special relevance. Here, the Government points to certain specific defenses, such as "an innocent involvement

7

defense" and a "merely pretending" defense, that could make this evidence against Mr. Aali specially relevant. *Gov't's Opp'n* at 2, n.3. But the Court has yet to see what defenses Mr. Aali presses at trial.

Here, the Court is less concerned that if admitted, the jury will view the evidence as indicative of Mr. Aali's bad character. As it common with Rule 404(b) evidence, the Court assumes that, upon request of one of the parties or sua sponte, the Court will caution the jury against using the evidence in this fashion. This instruction typically mitigates the possibility that the jury will misuse this evidence.

The other issue is the Court's Rule 403 analysis. Mr. Aali is concerned about the potentially prejudicial impact of this evidence, arguing that Mr. Aali "would need to be clairvoyant to know that it would somehow impact a conspiracy involving completely different people three years later." *Def.'s Mot.* at 2. In response, the Government points out that the evidence of "Defendant Aali's efforts in 2017 to coerce Al-Shawk to conspire to fix the wages of PSS workers is admissible . . . of his lack of mistake in the charged conspiracy." *Id.* Again, however, because the Court does not know the context, especially how the case is defended, the Court is not able to rule definitively in advance of trial.

Even if the Court excludes the evidence during the Government's case in chief, the evidence would almost certainly be admissible as impeachment evidence, if Mr. Aali takes the stand. *See* FED. R. EVID. 607.

Apart from giving the parties this general guidance, the Court will await the presentation of the evidence at trial. The Court instructs the Government to

approach the bench before engaging in questions concerning Mr. Aali's alleged prior wage fixing.

## V. CONCLUSION

The Court DISMISSES without prejudice the Defendant Yaser Aali's Motion in Limine to Exclude Evidence of Other Crimes, Wrongs, or Acts (ECF No. 193).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2023